Carol B. Lewis (SBN 130188)
  CLewis@crowell.com
Benjamin C. Watson (*Pro Hac Vice Forthcoming*)
  BWatson@crowell.com
CROWELL & MORING LLP
515 South Flower Street, 41st Floor
Los Angeles, CA 90071
Tel: 213.622.4750
Fax: 213.622.2690

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WOMEN'S RECOVERY CENTER, LLC, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY, et al.,<br><br>    Defendants.<br><br>AND RELATED COUNTERCLAIM | Case No.<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' RULE 45 MOTION TO QUASH PLAINTIFFS' SUBPOENA FOR PRODUCTION OF DOCUMENTS** |

Defendants seek an order quashing Plaintiffs' subpoena to the California Department of Managed Health Care ("**DMHC**") ("**Subpoena**") under Federal Rule of Civil Procedure ("**FRCP**") 45.

## I.   INTRODUCTION

The action underlying the Subpoena, *Women's Recovery Center, LLC, et al. v. Anthem Blue Cross Life And Health Insurance Company, et al.*, No. 8:20-cv-00102-JWH (ADSx) (CD Cal. Dec. 5, 2019) (**"Action"**), is a dispute over whether Plaintiffs—a collection of providers of substance use disorder treatment and clinical laboratory services in California—are entitled to receive more than the $34 million they already received for services provided to members of Blue Cross Blue Shield health plans on an out-of-network basis, or must repay millions of dollars they obtained through fraudulent billing.

The Action arose after certain Blue Cross plans uncovered Plaintiffs' long-running scheme to misappropriate millions of dollars through fraudulent healthcare claims. *See* First Am. Counterclaim (Aug. 1, 2025), Action ECF No. 361 ("**Counterclaim**"). Facing a Blue Cross investigation, Plaintiffs tried to shift the narrative by suing BCBS Entities for purported underpayment.[1] Plaintiffs also named defendants Viant, Inc., and MultiPlan, Inc. (collectively "**MultiPlan**"), which provide some BCBS Entities with cost-management solutions to control financial risks associated with healthcare billing.

To shift focus even further afield of their bad acts, Plaintiffs have now issued the Subpoena, which seeks documents concerning a range of potential investigations, regulatory submissions, and lawsuits that would be entirely outside the geographic, temporal, and topical scope of this case, concerning patients, providers, and

---

[1] The BCBS Entities are identified in the operative Fourth Amended Consolidated Complaint (Apr. 28, 2023), Action ECF No. 280, most of which are also counterclaimants.

regulators that are not involved in this case.[2]  Plaintiffs seek any investigative files, enforcement records, regulatory settlements, and active government files over the course of a decade concerning topics such as insurance regulatory violations, network adequacy, and mental health parity compliance, among other things. But Plaintiffs' Fourth Amended Consolidated Complaint ("**Complaint**") does not allege any such conduct nor concern services provided outside of California.[3]

Rather, the Complaint is targeted and claim-specific: it alleges a straightforward ERISA benefits and contract dispute concerning payments made to eleven substance use disorder ("**SUD**") treatment providers and clinical laboratories in southern California for services provided to specific patients between 2015 and 2019. Plaintiffs are suing as "assignees" of each patient's healthcare benefits, so Plaintiffs' entitlement to any additional payment ultimately turns on the terms of each patient's health plan contract. Regulatory submissions and government investigations, to the extent they exist, have no bearing on whether any BCBS Entity was contractually bound or made a promise to reimburse a particular patient's treatment at a particular rate and then failed to do so.

Plaintiffs appear to be using the Subpoena either to obtain information that another federal court recently refused to allow them to obtain[4] or in a bad faith attempt to exert what they perceive to be some kind of pressure on Defendants ahead of the parties' initial mediation. As set forth below, Defendants seek an order under

---

[2] Plaintiffs also issued subpoenas the Illinois Department of Insurance, Minnesota Office of the Attorney General, United States Department of Labor, and United States Department of Justice. Defendants have also filed a motion in the issuing court, the United Stated District Court for the Central District of California, seeking two forms of relief under Federal Rule of Civil Procedure 45: (1) a protective order precluding or limiting compliance with the Subpoenas on relevance and proportionality grounds; and (2) an order quashing or modifying the Subpoenas where they implicate Defendants' personal privileges and confidentiality interests, including in confidential settlement negotiations and proprietary commercial information.

[3] *See* Compl. (Apr. 28, 2023), ECF No. 280; *see also* Order Striking Portions of Compl. (Nov. 1, 2024), ECF No. 303.

[4] *See* MultiPlan's arguments, *infra*, Section IV-D.

FRCP 45 quashing or modifying the Subpoena where it implicates Defendants' personal privileges and confidentiality interests, including in confidential settlement negotiations and proprietary commercial information.

## II.     BACKGROUND

### A.     This Is a Dispute Over Payments on Specific Healthcare Claims.

Plaintiffs' allegations are narrow and transaction-specific: Plaintiffs claim to have provided "medically necessary, verified, preauthorized and covered" residential rehabilitation programs and laboratory services in California to specific members of health plans sold, insured, managed, or administered by BCBS Entities from 2015 to 2019. Compl. ¶¶ 1-11, 79; Declaration of Benjamin C. Watson ("Watson Decl.") ¶ 2. Plaintiffs purport to sue as assignees of any benefits covered under the members' health plan contracts. Compl. ¶¶ 82-83. Although Plaintiffs do not allege that these health plan contracts permitted payment at the full charges Plaintiffs' arbitrarily set for their services, Plaintiffs seek those full charges here. *See id.* ¶¶ 81, 87-88. And additional payment is the *only relief Plaintiffs seek*; they do not seek declaratory, injunctive, other equitable relief. *See id.*, Prayer. More recently, Plaintiffs have asserted that a "conflict of interest" should allow them a more favorable standard of review of payment determinations for claims subject to ERISA. *See* Joint Rule 26(f) Report (Mar. 14, 2025), Action ECF No. 318.

Defendants dispute Plaintiffs' allegations. Most BCBS Entities have counterclaimed on the grounds that Plaintiffs submitted fraudulent claims that caused BCBS Entities to improperly pay many millions of dollars. Counterclaim ¶ 9. Plaintiffs' practices included misrepresenting the services they provided on billing records, billing for rapid-fire lab panels and urine tests that were medically unnecessary (*e.g.*, repeatedly ordering panels and tests before the results of prior panels and tests could have issued), systematically waiving member cost-sharing obligations to entice members to obtain Plaintiffs' services, and improperly unbundling services on claim forms to effectively double-bill for their services. *Id.*

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-3-

MOT. TO QUASH AND/OR FOR PROTECTIVE
ORDER; NO. 8:20-CV-00102

Thus, all services at issue in the parties' respective pleadings were provided on an out-of-network basis by the same eleven SUD treatment providers and clinical laboratories operating in southern California during the same four period (2015 to 2019. Compl. ¶¶ 246, 296; Watson Decl. ¶ 2.

Plaintiffs assert four causes of action: (1) ERISA plan benefits under 29 U.S.C. § 1132(a)(1)(B), (2) breach of written contract for non-ERISA plans, (3) breach of oral contract, and (4) promissory estoppel. Compl. ¶¶ 242-338. The Counterclaim asserts six causes of action: (1) fraud, (2) negligent misrepresentation, (3) breach of contract for claims relating to non-ERISA plans, (4) violation of California's Unfair Competition Law, (5) restitution under ERISA § 502(a)(3), and (6) injunctive and declaratory relief under ERISA § 502(a)(3). Counterclaim ¶¶ 91-139.

### B.    The Subject Matter of the Subpoenas

On March 27, 2026, Plaintiffs served notice of the Subpoena.[5] The DMHC objected to the Subpoena on April 15, 2026.[6] The **DMHC Subpoena** seeks "[a]ll Substantive Documents and Substantive Communications" regarding the "reimbursement practices, claims handling, or treatment of SUD providers" of Blue Cross entities in California ("Anthem");[7] "Anthem's compliance with California Health and Safety Code § 1371.37 and any other state law limitations on retrospective claims review, utilization review, or recoupment of payments to providers";[8] "Anthem's use of prepayment review for MH/SUD Treatment providers";[9] "Anthem's termination or threatened termination of MH/SUD Treatment providers from its network";[10] "Anthem's compliance with federal and state mental health

---

[5] *See* Watson Decl., Ex. A (Plaintiffs' Notice of Subpoenas (Mar. 27, 2026)), Ex. 1 ("**DMHC Subpoena**").

[6] *See* Watson Decl., Ex. C (DMHC Objections, Apr. 15, 2026).

[7] DMHC Subpoena, Request 1.

[8] *Id.*, Request 3.

[9] *Id.*, Request 4.

[10] *Id.*, Request 6.

parity requirements as applied to MH/SUD Treatment and laboratory claims";[11] and "DMHC oversight of Anthem's Special Investigations Unit activities as applied to MH/SUD Treatment providers."[12] It also seeks "[a]ll reports, analyses, or data compilations prepared by DMHC" regarding "Anthem's rate of coverage denials overturned through the independent medical review process for MH/SUD Treatment or behavioral health claims"[13] and "[a]ll complaints, grievances, or referrals" submitted to DMHC by healthcare providers regarding Anthem's handling and reimbursement of MH/SUD claims, prepayment review, SIU activities, network terminations, and coverage denials.[14]

BCBS Entities' objections to compliance with these subpoenas are as follows:

| Request | Specific Objections |
| --- | --- |
| **Request No. 1:** All documents and communications re DMHC's investigation into Anthem's reimbursement practices, claims handling, or treatment of SUD providers | Irrelevant (investigation into Anthem conduct distinct from the claims at issue); overbroad and disproportionate to the needs of the case under Fed. R. Civ. P. 26(b)(1) |
| **Request No. 2:** All provider grievances re Anthem claims handling, prepayment review, fraud investigations, network termination, MH/SUD coverage denials | Not limited to the specific claims, providers, or time period at issue in this litigation; overbroad and disproportionate to the needs of the case under Fed. R. Civ. P. 26(b)(1) |
| **Request No. 3:** Cal. Health & Safety Code § 1371.37 compliance (recoupment) | No recoupment cause of action alleged in this case; not limited to the specific claims, providers, or time period at issue in this litigation; irrelevant |

---

[11] *Id.*, Request 7.

[12] *Id.*, Request 8.

[13] *Id.*, Request 5.

[14] *Id.*, Request 2.

MOT. TO QUASH AND/OR FOR PROTECTIVE ORDER; NO. 8:20-CV-00102

| **Request No. 4:** Prepayment review for MH/SUD providers | Not limited to the specific claims, providers, or time period at issue in this litigation; overbroad and disproportionate to the needs of the case under Fed. R. Civ. P. 26(b)(1) |
|---|---|
| **Request No. 5:** IMR overturn rates | Not limited to the specific claims, providers, or time period at issue in this litigation; statistical data not tied to Plaintiffs' specific claims; overbroad and disproportionate to the needs of the case under Fed. R. Civ. P. 26(b)(1); irrelevant |
| **Request No. 6:** Provider terminations / network adequacy | No network adequacy cause of action alleged in this case; not limited to the specific claims, providers, or time period at issue in this litigation; irrelevant |
| **Request No. 7:** Mental health parity compliance | No parity cause of action alleged in this case; not limited to the specific claims, providers, or time period at issue in this litigation; overbroad and disproportionate to the needs of the case under Fed. R. Civ. P. 26(b)(1) |
| **Request No. 8:** SIU oversight | Not limited to the specific claims, providers, or time period at issue in this litigation; overbroad and disproportionate to the needs of the case under Fed. R. Civ. P. 26(b)(1); seeks confidential, non-public government investigative files without any showing of need |

## III.   LEGAL STANDARD

"[T]he court for the district where compliance is required must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii).  A party may move to quash a subpoena that requires "'disclosure of privileged or other protected matter, if no exception or waiver applies,' or if the subpoena 'subjects a person to undue burden.'" *M.S. v. Angus*, No. 2:23-cv-09957, 2025 WL 2995081, at *2 (C.D. Cal. Sept. 2, 2025) (quoting Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv)); *see also Rainwater v. McGinniss*, No. CIV S-10-1727, 2011 WL 2531198, at *1 (E.D. Cal.

June 23, 2011) (recognizing that a party may seek to quash a subpoena based on a claim that it infringes upon the party's legitimate interests and granting motion to quash) (citing *United States v. Tomison,* 969 F. Supp. 587, 596 (E.D. Cal. 1997)).

## IV.    ARGUMENT

### A.    The Subpoena Seeks Materials Protected by the Attorney-Client Privilege and Work Product Doctrine.

The Subpoena purports to seek "communications" and submissions that Defendants may have prepared and provided to government agencies while responding to regulatory inquiries—including any Anthem correspondence with the DMHC concerning its investigations.[15]

If any such submissions exist and were prepared by or at the direction of outside or in-house counsel—including related legal analyses, privilege logs, legal position statements, counsel-to-agency correspondence, and documents selected and compiled by or at the direction of counsel in anticipation of enforcement proceedings—they are protected by the attorney-client privilege and the work product doctrine. *See Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981) ("[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice."); *United States v. Nobles*, 422 U.S. 225, 237–38 (1975) (the work-product doctrine is "a qualified privilege for certain materials prepared by an attorney acting for his client in anticipation of litigation") (citation and quotation marks omitted).

Defendants hold and have not waived privilege for these documents and communications regardless of whether the DMHC currently retains them. *See, e.g.*, *Regents of Univ. of Cal. v. Super. Ct.*, 81 Cal. Rptr. 3d 186, 195 (Ct. App. 2008) ("defendants' cooperation with the government did not waive the attorney-client and attorney work product privileges"); *see also, e.g.*, *United States v. Sanmina Corp.*,

---

[15] DMHC Subpoena, Request 1.

CROWELL & MORING LLP
ATTORNEYS AT LAW

MOT. TO QUASH AND/OR FOR PROTECTIVE ORDER; NO. 8:20-CV-00102

968 F.3d 1107, 1119-20 (9th Cir. 2020) ("[W]aiver of attorney-client privilege by disclosure to a third party 'does not necessarily affect the work product protection since the two are designed to accomplish different results.'") (citation omitted). Rule 45(d)(3)(A)(iii) mandates quashing a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies."

### B.    The Subpoena Seeks Defendants' Trade Secrets and Confidential Commercial Information.

The Subpoena also targets subject matter derived from—or constituting—Defendants' proprietary commercial information submitted to government agencies under confidentiality expectations. Among other things, the DMHC Subpoena seeks analyses of Anthem's prepayment review practices and denial rates that would necessarily derive from Anthem's internal claims processing data, denial rate statistics, SIU protocols, prepayment review criteria, and actuarial analyses, to the extent Anthem has submitted such documents to the DMHC.[16]

The Subpoena purports to seek Defendants' sensitive and confidential commercial information and/or trade secrets within the meaning of Rule 45(d)(3)(B)(i), and the parties whose information is at stake have independent standing to seek protection from re-disclosure. *See, e.g.*, *SPS Techs., LLC v. Briles Aerospace, Inc.*, No. CV 18-9536, 2019 WL 13108018, at *1-2 (C.D. Cal. June 24, 2019) (noting that Rule 45 protections include not only trade secrets but also confidential commercial information and granting motion to quash subpoena).

A stipulated protective order between the parties may, in some circumstances, be a sufficient remedy for confidentiality concerns but where, as here, there is a substantial risk of dissemination of confidential information beyond the bounds of any protective order, a motion to quash may be the only adequate remedy. *See*, *e.g.*, *Rocky Mountain Med. Mgmt., LLC v. LHP Hosp. Grp., Inc.*, No. 4:13-cv-00064, 2013 WL 6446704, at *6 n.5 (D. Idaho Dec. 9, 2013) (rejecting argument that

---

[16] DMHC Subpoena, Requests 4-5.

confidentiality concerns were adequately addressed by an existing protective order because "there is 'constant danger [of dissemination to third parties] inherent in disclosure of confidential information pursuant to a protective order'") (alteration in original) (citation omitted).

The risk of dissemination is particularly acute in this litigation, where Plaintiffs' counsel Arnall Golden Gregory ("**AGG**") were found to have violated a stipulated protective order by allowing executives of their clients—*the same Plaintiffs in this case*—to view documents designated as "attorneys' eyes only" in a litigation making nearly identical allegations to those at issue here. *See* Watson Decl. ¶ 7 & Ex. E (Special Master's Report & Recommendation No. 13 re Sanctions for Plaintiffs' Violation of the Stipulated Protective Order at 9-10, 16, *TML Recovery, LLC v. Cigna Corp.*, No. 8:20-cv-00269 (C.D. Cal. July 17, 2023), ECF No. 317). Compounding this risk, just last year *another court sanctioned AGG for knowingly and intentionally breaching another protective order* by transmitting documents designated attorneys' eyes only to a third party. *See* Declaration of Errol J. King, Jr. ("King Decl."), Ex. 3 (Order, *L.D. v. United Behav. Health*, No. 4:20-cv-02254 (N.D. Cal. Oct. 7 & 15, 2025), ECF No. 518, at 6-7, & ECF No. 521). The court aptly observed "a troubling pattern in plaintiffs' firm's behavior" demonstrating AGG's "willingness to treat the terms of protective orders to which they themselves have stipulated as optional." *Id.*

Thus, a protective order cannot adequately safeguard Defendants' confidential information. Quashing the subpoena is not only warranted, but necessary.

### C.    Defendants Have a Direct Privacy and Confidentiality Interest in Their Agreements with Regulators.

To the extent any Defendant agreed to a corrective action plan, consent agreement, or settlement with a regulator, that Defendant is a direct party to that instrument with a personal confidentiality interest it may assert independent of any interest the regulator holds. Plaintiffs seek all enforcement actions, corrective action

plans, and settlements related to Anthem's recoupment and SIU practices.[17]

Any such instruments that exist were negotiated with express confidentiality expectations, often reflected in confidentiality clauses, and Defendants have a direct contractual and legal interest in preventing their disclosure in unrelated private civil litigation. This is within the scope of "other protected matter" under Rule 45(d)(3)(A)(iii). *See, e.g.*, *Hannah v. Gen. Motors Corp.*, 969 F. Supp. 554, 558 (D. Ariz. 1996) (granting party's motion to quash subpoena seeking settlement agreement where plaintiffs articulated "no legitimate reason why the Settlement Agreement should be disclosed").

The public policy underlying Federal Rule of Evidence 408 similarly reflects the principle that settlement negotiations, including with government entities, are confidential and should not be weaponized as evidence of liability. *See, e.g.*, *United States v. McKesson Corp.*, No. 21-mc-80065, 2021 WL 2037965, at *19 (N.D. Cal. May 21, 2021) ("Indiscriminate production of investigatory files and administrative records would discourage cooperation by persons outside the agencies and candid discussion by persons inside the agencies . . . . The interest in confidentiality clearly outweighs defendants' interest in obtaining these broad categories of documents, many of which have little or no relevance to the claims and defenses at issue in this proceeding.") (citation omitted). This principle applies directly to Defendants as participants in those negotiations who have a personal interest in preventing their negotiating positions from being used against them in this or any other proceeding.

### D.    Plaintiffs' Improper Discovery Tactics Extend Beyond This Case, and Separately Necessitate Granting This Motion.

MultiPlan writes separately to advise the Court that Plaintiffs' counsel's firm appears to be using the Subpoena to obtain materials that another federal court expressly refused to allow them to obtain.

MultiPlan and several other defendants in this action are also parties to a

---

[17] DMHC Subpoena, Requests 3(c), 8(c).

CROWELL & MORING LLP
ATTORNEYS AT LAW

MOT. TO QUASH AND/OR FOR PROTECTIVE ORDER; NO. 8:20-CV-00102

multidistrict litigation involving industry-wide antitrust allegations by out-of-network providers, *In re MultiPlan Health Insurance Provider Litigation*, No. 1:24-cv-06795 (N.D. Ill.) (the "MDL"). Until recently, Plaintiffs' firm, AGG, represented several MDL plaintiffs. King Decl. ¶ 3. In the MDL, those plaintiffs sought production of every communication and document MultiPlan sent to any government actor—including the DOL and DOJ—over a 13-year period regarding its out-of-network business. *Id.* The MDL court agreed with MultiPlan and expressly rejected that effort. *See id.* & Ex. 2 (Nov. 14, 2025 Minute Order, ECF No. 586, No. 1:24-cv-06795 (N.D. Ill.)). AGG was representing MDL plaintiffs when that ruling was entered and is unquestionably aware of it. The subpoenas in this action seek materially similar documents on the same improper grounds.

Moreover, another court in a related litigation sanctioned AGG for knowingly and intentionally breaching a protective order by secretly entering into a "Common Interest Agreement" with Department of Labor officials and transmitting to them documents designated attorneys' eyes only. *See* King Decl. ¶ 4 & Ex. 3 (Order, *L.D. v. United Behav. Health*, No. 4:20-cv-02254 (N.D. Cal. Oct. 7 & 15, 2025), ECF Nos. 518, 521). To MultiPlan's knowledge, Plaintiffs' counsel has never obtained the type of investigatory materials sought here through proper discovery channels in any case. *Id.* ¶ 5. This case should be no exception, and the Court should not reward this transparent end-run around the MDL ruling.

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court quash the Subpoena in its entirety under Federal Rules of Civil Procedure 45(d)(3).

Dated:  May 8, 2026

CROWELL & MORING LLP
By: */s/ Carol B. Lewis*
Carol B. Lewis
Benjamin C. Watson
(Pro Hac Vice Forthcoming)

Attorneys for Defendants
Anthem Blue Cross Life and Health Insurance Company, Blue Cross of California d/b/a Anthem Blue Cross, Anthem, Inc. (n/k/a Elevance Health, Inc.), The Anthem Companies of California, Inc., (n/k/a The Elevance Health Companies of California, Inc.), Blue Cross Blue Shield of Wisconsin, Anthem Insurance Companies, Inc., d/b/a in Indiana as Anthem Blue Cross and Blue Shield, Blue Cross and Blue Shield of Alabama, USAble Mutual Insurance Company d/b/a Arkansas Blue Cross and Blue Shield, Anthem Health Plans, Inc., d/b/a Anthem Blue Cross and Blue Shield of Connecticut, Blue Cross and Blue Shield of Florida, Inc., Blue Cross and Blue Shield of Georgia, Inc., Health Care Service Corporation d/b/a Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield of Oklahoma, and Blue Cross and Blue Shield of Texas, Anthem Health Plans of Kentucky, Inc. d/b/a Blue Cross Blue Shield of Kentucky, BCBSM, Inc. d/b/a Blue Cross and Blue Shield of Minnesota, HMO Missouri, Inc., d/b/a Anthem Blue Cross and Blue Shield of Missouri, Blue Cross and Blue Shield of North Carolina, Community Insurance Company, d/b/a Anthem Blue Cross and Blue Shield of Ohio, BlueCross BlueShield of Tennessee, Inc., Anthem Health Plans of Virginia, Inc. d/b/a Anthem Blue Cross and Blue Shield of Virginia, CareFirst BlueChoice, Inc., CareFirst of Maryland, Inc., d/b/a CareFirst Blue Cross Blue Shield, Anthem HealthChoice Assurance, Inc., d/b/a Anthem Blue Cross and Blue Shield, HealthKeepers, Inc., Healthy

CROWELL
& MORING LLP
ATTORNEYS AT LAW

MOT. TO QUASH AND/OR FOR PROTECTIVE
ORDER; NO. 8:20-CV-00102

Alliance Life Insurance Company, Premera Blue Cross, Rocky Mountain Hospital and Medical Service, Inc., d/b/a Anthem Blue Cross and Blue Shield of Colorado, Blue Cross and Blue Shield of Massachusetts, Inc., Blue Cross and Blue Shield of Nebraska, Inc., Blue Cross and Blue Shield of South Carolina, Regence BlueCross BlueShield of Oregon, Regence Blue Shield of Washington, Blue Cross & Blue Shield of Rhode Island, HMO Louisiana, Inc., Blue Cross and Blue Shield of Kansas City, Inc.

Dated:  May 8, 2026

PHELPS DUNBAR LLP

By: */s/ Errol J. King, Jr.*

Errol J. King, Jr.
(Pro Hac Vice Forthcoming)

Attorneys for Defendants
Viant, Inc. and MultiPlan, Inc.

Dated:  May 8, 2026

REED SMITH LLP

By: */s/ Ally Allegretto*

Ally Allegretto
(Pro Hac Vice Forthcoming)

Attorneys for Defendants
Highmark Inc. d/b/a Highmark Blue Cross Blue Shield, Highmark Inc., d/b/a Highmark Blue Shield (f/k/a Pennsylvania Blue Shield)

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-13-

MOT. TO QUASH AND/OR FOR PROTECTIVE ORDER; NO. 8:20-CV-00102

Dated:  May 8, 2026

FOLEY & LARDNER LLP
By: __/s/ *Jason Y. Wu*_____
Jason Y. Wu

Attorneys for Defendants
Capital Blue Cross; Excellus Health Plan, Inc., dba Excellus BlueCross BlueShield; and Independence Hospital Indemnity Plan, Inc.

*Filer's Attestation: Pursuant to Local Rule 131(e) regarding signatures, Benjamin C. Watson hereby attests that concurrence in the filing of this document and its contents has been obtained by all signatories listed.*

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-14-

MOT. TO QUASH AND/OR FOR PROTECTIVE ORDER; NO. 8:20-CV-00102